IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMAD M.A., | Civil No. 1:26-cv-03432-MWJS |
| Petitioner, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | |
| KRISTI NOEM, *et al.*, | A# 043-288-525 |
| Respondents. | |

## **INTRODUCTION**

Petitioner Emad M.A.[1] has been in immigration detention for roughly ten months.  He has filed a petition for a writ of habeas corpus, arguing that his prolonged detention is unlawful under Supreme Court precedent.  The government responds in part by pointing to Petitioner's serious criminal history and the danger it says he poses to the community.  But under controlling Ninth Circuit law, dangerousness cannot justify continued detention once removal is no longer reasonably foreseeable; it bears only on the conditions of release.  For the reasons that follow, the court agrees that Petitioner's detention has become impermissibly prolonged, and his petition is GRANTED.

---

[1]     For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of his last name are used in this order.

## BACKGROUND

Petitioner is a 52-year-old man who was born in Kuwait in 1973 to a family of Palestinian origin.  An immigration judge ordered him removed to Kuwait in June 2015.  Dkt. No. 13-3.  Following that order, ICE detained him for approximately one year, was unable to obtain a travel document, and released him in 2016.  Petitioner then lived in the community for roughly nine years.

During those years, Petitioner accumulated a lengthy and serious criminal record, reflected in the documents the government has submitted.  *See* Dkt. Nos. 13-5, 13-6.  That record includes repeated arrests and convictions involving assault, as well as numerous findings, over many years, that Petitioner was mentally incompetent to stand trial.  See Dkt. No. 13-5.  The government re-detained Petitioner directly from state custody in August 2025.  Dkt. No. 13-6; Dkt. No. 13-1 ¶ 11.  He has remained in immigration detention since, a period now amounting to roughly ten months.

Petitioner now seeks habeas relief, citing the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not likely in the reasonably foreseeable future.  Dkt. Nos. 1, 9.  The government, in turn, represents that it submitted a travel document request to Kuwait on November 13, 2025, and that it "continue[s] to follow up" with a Kuwaiti point of contact.  Dkt. No. 13-1 ¶¶ 12, 14.  As of the government's filing, that request—submitted nearly seven months earlier—remains

unanswered.  The government represents that it is not, at this time, seeking to remove Petitioner to a third country.  Dkt. No. 13, at pg. 1; Dkt. No. 13-1 ¶ 12.

## DISCUSSION

Petitioner is in immigration custody and argues that his prolonged detention violates federal law; the court has jurisdiction over his habeas petition.  28 U.S.C. §§ 2241(a), (c)(3) (authorizing district courts to exercise habeas jurisdiction to consider challenges to the legality of an individual's detention under "the Constitution or laws or treaties of the United States."); *see also Zadvydas*, 533 U.S. at 688.

Turning to the merits, because Petitioner has been detained to effectuate an order of removal, a 90-day "removal period" applies, during which he may lawfully be held. 8 U.S.C. §§ 1231(a)(1), (a)(2).  That period may be extended under 8 U.S.C. § 1231(a)(6), which places no express limit on the length of further detention.  But in *Zadvydas*, the Supreme Court rejected the notion that § 1231(a)(6) authorizes "indefinite detention." 533 U.S. at 689.  The Court held that the statute permits detention only for "a period reasonably necessary to bring about that [noncitizen's] removal."  *Id.*  It follows that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.* at 699.  A detention period of six months is "presumptively reasonable."  *Id.* at 701.  Beyond six months, however, once a petitioning noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government "must respond with evidence sufficient

3

to rebut that showing." *Id.* And "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Applying that framework here, the court concludes that Petitioner has met his burden. He has been under a final order of removal for eleven years. During his 2015–2016 detention, ICE could not obtain a travel document and thus released him. In this way, the government acknowledged, in effect, that his removal was not then reasonably foreseeable. And Petitioner persuasively argues that nothing in the intervening decade has made his removal any more likely. His circumstances have not changed. And his argument is supported by the fact that the government has been unable to secure Petitioner's removal during the ten months of Petitioner's latest detention. These facts amount to "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701; *see also Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1165 (E.D. Cal. 2025) (concluding that removal was not "reasonably foreseeable" where the government was unable to secure travel documents for a petitioner ordered removed five years prior).

The burden thus shifts to the government, whose evidence must show a "significant likelihood of removal" in the "reasonably foreseeable future." *Id.* And here, the government's efforts to remove Petitioner do not show a significant likelihood of removal, particularly as the "reasonably foreseeable future" must "shrink" the longer

4

detention continues.  *Id*.  The government's showing is a travel document request submitted to Kuwait on November 13, 2025, which it "continue[s] to follow up" on. Dkt. No. 13-1 ¶¶ 12, 14.  That request has gone unanswered for nearly seven months. The government identifies no other travel document that has been issued, no specific removal arrangements that have been made, and, crucially, there is no commitment from Kuwait to accept Petitioner.  On this record, the government has not carried its burden of rebuttal.

That conclusion is not altered by the government's emphasis on Petitioner's criminal history and the danger it contends he poses.  The court does not minimize that history.  The record reflects violent conduct and a serious, documented history of mental illness, and the court has no difficulty concluding that Petitioner's release presents real concerns for community safety.  But controlling Ninth Circuit precedent forecloses reliance on those concerns to justify continued detention under § 1231(a)(6). In *Tuan Thai v. Ashcroft*, the government argued that *Zadvydas* permitted the continued detention of a noncitizen whose mental illness made him dangerous to the community. 366 F.3d 790, 794 (9th Cir. 2004).  The Ninth Circuit squarely rejected that argument, holding that § 1231(a)(6), as construed in *Zadvydas*, contains no exception for dangerous or mentally ill noncitizens whose removal is not reasonably foreseeable.  *Id*. at 797–98. As the court explained, even as to a petitioner with a record of serious violent crime,

"[i]f a need to protect the community did not justify the detention of Ma—a killer—under § 1231(a)(6), it similarly does not justify the detention of Thai." *Id.* at 797.

Courts in this district have applied *Tuan Thai* to the same effect, holding that a petitioner's dangerousness cannot defeat a *Zadvydas* claim, but instead bears only on the conditions of release. *See Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1185-86 (E.D. Cal. 2025) (rejecting reliance on petitioner's in-custody altercations and explaining that "[t]he government's concern about the safety of the community can be addressed through the conditions of supervision imposed on Petitioner upon his release"); *Kovalchuk v. Martinez*, No. 1:26-cv-00978 JLT FJS (HC), 2026 WL 1179736 (E.D. Cal. Apr. 30, 2026) (concluding that *Tuan Thai* required release of a petitioner with "a lengthy and serious criminal history," "albeit on appropriate conditions of supervision").

Bound by Ninth Circuit precedent, this court must grant the petition and order Petitioner's release on conditions of supervision.[2]

That the Ninth Circuit's precedent compels release does not mean it requires release on lenient terms, and nothing in this order should be read to suggest otherwise. As noted, the record before the court reflects a lengthy history of serious, often violent

---

[2]      In addition to his claim under § 1231(a)(6), Petitioner advances further claims, including those concerning the threat of removal to a third country, the revocation of his prior release, and the conditions of his detention. *See* Dkt. No. 9. Because resolution of the *Zadvydas* claim entitles Petitioner to release, and because the third country removal claims rest on a contingency the government represents is not currently at issue, the court declines to resolve those remaining claims at this time.

6

criminal conduct, compounded by a history of mental illness.  Those facts can have no bearing on the factual question of whether Petitioner's removal is reasonably foreseeable—and so they do not bear on the question of whether Petitioner must be released—but they do bear heavily on the terms under which he is released.  The court therefore recognizes, in the strongest terms, that the conditions of supervision in this case may need to be exacting.  Depending on what the record developed by the parties reveals, those conditions may appropriately include the most restrictive measures available short of detention necessary to protect both the public and Petitioner himself.  The court expects the parties to address these conditions with the seriousness this record demands.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus is GRANTED.  The court's May 6, 2026, order barring Petitioner's transfer outside this district is LIFTED.  The court ORDERS Respondents to release Petitioner from detention on appropriate conditions of supervision, in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.  To allow supervising authorities reasonable opportunity to determine appropriate conditions of supervision, the court orders that release be effected within thirty (30) days of the date of this order.  The parties are ORDERED to file a joint status report within seven (7) days of release, confirming that Petitioner has been released and reporting on the conditions imposed.

7

The Clerk of Court is DIRECTED to close this case and enter judgment for

Petitioner.

IT IS SO ORDERED.

DATED:  June 12, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 1:26-03432-MWJS, *Emad M.A. v. Noem, et al*; ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS